# Staunton.

## W. B. FARANT v. E. L. BEALE ET AL.

September 22, 1927.

Absent, Prentis, P.

1. BILLS, NOTES AND CHECKS—*Listing for Taxation—Effect of Failure to List under Section 8 of the Tax Bill (Acts 1918, page 171)—Case at Bar.*—In a suit praying that a judgment on a note be declared null and void because the holder of the note had failed to list it for taxation, it appeared from the evidence of the commissioner of the revenue that where bills payable exceed bills receivable, in many instances the taxpayers were not required to list their bills receivable, and the holder of the note in question testified that as his bills payable had for a long period exceeded his bills receivable, with the knowledge of the commissioner of the revenue, he had not been accustomed to list them. From the evidence it appeared that no violation of law was intended by the holder of the note. The act of 1918 did not declare that a judgment rendered on a note not listed should be invalid.

   *Held:* That while the holder of the note failed to comply with the statute, section 8 of the tax bill (Acts 1918, page 171), the judgment upon the note was not void, that an illegal return was not conclusive evidence that the return was fraudulent, and under Acts of 1924, page 468, tax bill, section 8, validating prior judgments and notes not listed for taxation, the judgment on the note was valid.

2. BILLS, NOTES AND CHECKS—*Listing for Taxation—Effect of Failure to List Under Section 8 of the Tax Bill of 1918—Purpose of the Provision.*— The provision in section 8 of the tax bill (Acts 1918, page 171) providing that omitted evidences of debt shall not be recoverable by action at law or suit in equity until reported for assessment and the taxes paid, was not inserted in the act for the benefit of the debtor, but to secure to the Commonwealth the taxes due but unpaid.

3. BILLS, NOTES AND CHECKS—*Listing for Taxation—Effect of Failure to List under Section 8 of the Tax Bill (Acts 1918, page 171)—Acts 1924 Validating Prior Judgments.*—Acts of 1924, page 468, tax bill, section 8, validating judgments rendered upon bonds and notes and other

evidences of debt not listed for taxation, embraces all judgments rendered prior to its passage.

4. BILLS, NOTES AND CHECKS—*Listing for Taxation—Effect of Failure to List on Validity of Judgment on Note—Acts 1924 Validating Judgments.*—Acts of 1924, page 466, tax bill, section 8, validating judgments rendered upon bonds and notes and other evidences of debt not listed for taxation, is constitutional.

5. STATUTES—*Retrospective Statutes—Constitutionality of Curative Acts.*— A retrospective statute curing defects in legal proceedings where they are in their nature irregularities only and do not extend to matters of jurisdiction is not void on constitutional grounds unless expressly forbidden.

Appeal from a decree of the Circuit Court of Southampton county. Judgment for complainant. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Jenkins & Jenkins*, for the appellant.

*R. E. L. Watkins*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

The appellant was the holder of a negotiable note executed by the appellee, E. L. Beale, for the sum of $4,000.00 (subject to certain credits), which bore date February 9, 1920, payable ninety days after date, to the order of W. P. Whiteaker, at Bankers Trust Company, Norfolk, Virginia. Upon failure of payment at maturity, Farant brought an action at law to obtain judgment against E. L. Beale for the balance due upon said note. During the course of the trial Farant, who testified as a witness in his own behalf, was asked, upon cross-examination, if he had listed the note for taxation as required by the act of 1918 (Acts 1918, chapter 101). His answer to the question was: "Sure I have listed

it along with my other property." The trial resulted in a verdict for Farant in the sum of $4,000.00, subject to certain credits, upon which verdict the court thereupon entered judgment.

On the 19th day of December, 1921, Farant filed his bill in equity, to subject the lands of appellee to the payment of the judgment. To this bill of complaint appellee filed an answer, which he asked to be treated as a cross-bill, alleging, amongst other things, that the judgment was procured by fraud; that it was void by reason of the failure of the appellant to give in for taxation the note upon which the judgment was obtained.

While this suit was pending, appellee, at the first January Rules, 1926, filed a bill of complaint setting forth that the judgment in question was void, and praying that the same be so declared and marked null and void upon the judgment lien docket. Farant demurred to this bill as being insufficient in law; but the court overruled the demurrer, and thereupon Farant answered the bill of complaint and reiterated in his answer that he had in fact duly listed for taxation the note upon which the notice of motion was brought, with the proper tax official, the commissioner of the revenue for the city of Norfolk for the year 1921.

A. P. Pannill, commissioner of the revenue, testified, in chief, that the appellant in making his tax return for the year 1921 gave in his tangible personal property as two automobiles and household effects of the value of $2,300.00. On cross-examination his testimony is as follows:

"Q. Mr. Pannill, is it or not the custom of your office when a taxpayer informs you that his bills payable are in excess of his bills receivable to make no entry on his interrogatory?

"A. It is frequently done, but it cannot be accepted as an authorized custom.

"The difficulty in locating and securing on account of the limited time for thirty to forty thousand personal property taxpayers renders it almost impossible for the commissioner to get a complete return in each case, the returns coming in as a rule late coupled with the necessity of holding the books justified in some instances in the commissioner's mind that notes payable will exceed notes receivable leaves him nothing else to do but to accept the statement and attempt to locate anything taxable for that year during the following year and assess as omitted.   This responsibility is likewise placed on the examiner of records.

"Q. Mr. Pannill, how long have you filled the office of commissioner of revenue?

"A. Four years.

"Q. Your answer to the question preceding has reference to your whole term of office, has it not?

"A. Yes.

"Q. There are many men in this city of large affairs who have a great many bills receivable and bills payable.   When such taxpayers make their returns, is it customary for them to make an itemized list of their bills payable and receivable?

"A. Some have and some have not.   Where I have taken the return personally I have accepted the statement without a detailed list, in cases where it was difficult or the time was limited, in order to secure the data."

As the recovery of judgment upon the note is also attacked on the ground of fraud, the evidence of the appellant becomes so very material as explanatory of his statement that he had given in the note for taxation, that we quote it in full:

"Q. When you went to turn your interrogatory for personal property to the commissioner of revenue in the year 1921, was anything said about your intangible property?

"A. I could not swear whether any question was asked or not; I do not remember.

"Q. Have you ever, during the years in which you have made such returns, talked this matter over with the commissioner of revenue?

"A. Yes.

"Q. Will you please state the result of such conference?

"A. He said, 'Billie, it is not necessary to put it in.'

"Q. Have you been an intimate friend of the present commissioner of revenue?

"A. I have known him for years and years.

"Q. Were you personally acquainted with his predecessor in office?

"A. I certainly was.

"Q. Can you recall whether you have ever returned for taxation any notes or bills receivable?

"A. If I did, it was the first year that I ever had any business at all, and I don't remember what year it was. When I did that I just got a little cash and did not have any bills payable.

"Q. Please state the facts that justify this action.

"A. It is just as I say, whenever they have asked me I just told them that my bills payable were greatly in excess of my bills receivable; now whether they asked me in 1921, I cannot say.

"Q. Mr. Farant, it appears from the evidence of the commissioner of revenue that he left with you from the 16th of March, 1921, an interrogatory for you to fill out showing your taxable personal property and that this return was not made to his office until the

29th day of June, 1921. Will you please state why you did not, in that period of time, prepare a list of your bills payable and bills receivable and attach it to your return?

"A. Because it had never been required.

"Q. Will you state to the court that for a period of fifteen years your bills payable have exceeded your bills receivable.

"A. I can, most assuredly.

"Q. Mr. Farant, have you filed any supplemental report to your returns made to Commissioner Pannill since June 29, 1921?

"A. I have made no effort to change anything at all.

"Q. Does that report describe all of your personal property, both tangible and intangible, which you returned for the year 1921?

"A. As far as I know it does."

The cause was heard upon the bill, answer and depositions of Pannill and appellant. The court being of opinion that appellant had not complied with the provisions of section 8 of the tax bill (Acts 1918, chapter 101), "in that he had not *properly* listed for taxation with the commissioner of the revenue the note of E. L. Beale upon which judgment was obtained," declared the judgment void and of no effect.

[1] We agree with the conclusion of the learned chancellor, that the appellant failed to comply with the statute in the manner in which his return of intangible property was made. That he did make his tax returns in a manner frequently resorted to is a matter of common knowledge.

As no mention was made of the question of fraud in the decree entered, we take it that this question was not seriously considered by the chancellor. The evidence of both the commissioner and the appellant

convinces us that no violation of the law was intended when appellant gave in his property for taxation in the manner indicated.    That it was an illegal return is not conclusive evidence that it was a fraudulent return. We do not think the question of fraud enters into a consideration of the cause.

The law in effect at the time of the trial of the action of *Farant* v. *Beale* on the promissory note, requiring the taxpayer to list his property for taxation, was in section 8 of the tax bill, and found on page 171 of the Acts of 1918.    This act provides that the commissioner of the revenue shall require each taxpayer to make out a list in detail of all notes and other evidences of debt owing to such taxpayer, and providing that credit shall be given for debts due by said taxpayer if a list be filed showing the amount of said demands or ˙debts owing and the amount of each.    The following language then ensues:

"If any person, firm or corporation shall, with a view to evade the payment of taxes, fail or refuse to make out and deliver under oath such list and statement as herein provided for of any such bonds, notes or other evidences of debt, then the omitted evidences of debt shall not be recoverable, by action at law or suit in equity, in any of the courts of this Commonwealth, or by any legal process, or by sale under deed of trust, or otherwise, until they shall have been reported for assessment, and the taxes paid thereon for the years that they should have been paid, with an addition of fifty per centum of the amount of said unpaid taxes; and the failure to make out such list and statement to the said commissioner shall be taken as *prima facie* evidence of the intention to so evade payment of taxes."

[2] The passage of this act was an effort upon the part of the Commonwealth to compel the owner of

intangible property to return the same for taxation. It is to be observed that the act does not require, as do the subsequent acts of 1922 (Acts 1922, chapter 332) and 1924 (Acts 1924, chapter 306), that the plaintiff in every action at law or suit in equity shall be required to allege in his pleadings that such bonds, notes or other evidences of debt have been reported for and have been assessed for taxation. Nor does the act of 1918 declare, as do the subsequent acts, that the judgment rendered or the decree entered shall be invalid unless such allegation is made. The act of 1918 only provides that the omitted evidences of debt shall not be recoverable by action at law or suit in equity until they shall have been reported for assessment and the taxes paid thereon for the years that they should have been paid. This provision was inserted in the act, not for the benefit of the debtor, but to secure to the Commonwealth the taxes due but unpaid.

Seeking to further strengthen the hold of the Commonwealth upon the delinquent taxpayer, the General Assembly, in 1922, passed an act containing this provision:

"In every action at law or suit in equity in a court of record for the collection of any such bonds, notes or other evidences of debt, taxable hereunder, the plaintiff shall be required to allege in his pleadings that such bonds, notes or other evidences of debt have been reported for taxation and assessed for each and every year on the first day of February of which he was the owner of the same, and no judgment or decree of the court shall be valid unless it recites that such allegation was made."

This act inaugurated a new procedure, as it had not been the practice to require an allegation that the instrument sued on had been returned for taxation. No doubt realizing that the validity of numerous judg-

ments would be jeopardized by reason of the failure of the pleadings to contain the required allegation as to return of intangibles for taxation, the General Assembly, in 1924, passes a remedial statute containing the following language: "\* \* \* all judgments upon bonds, notes and other evidences of debt entered before this act shall take effect are hereby validated, legalized and confirmed, and are declared to have the same force and effect as if they contained the allegation herein required."

[3] This act validated all prior judgments by reading into them the required allegations as to return and assessment of intangible property. That its provisions extended to and embraced all judgments rendered prior to its passage, is, we think, made manifest by the language employed.

[4] No question is raised as to the constitutionality of the act of 1924, in the instant case, nor do we think any successful attack can be made upon its constitutionality.

[5] In Cooley on Const. Lim., page 530, it is said: "A retrospective statute curing defects in legal proceedings where they are in their nature irregularities only and do not extend to matters of jurisdiction is not void on constitutional grounds unless expressly forbidden."

In Virginia there is no such constitutional inhibition.

Upon the whole case, we are of opinion that the decree entered by the trial court should be reversed; that the demurrer to the bill should be sustained; that, after ascertainment and collection of the taxes and penalties due upon the E. L. Beale note held by appellant, the suit instituted for the enforcement of the judgment lien should be proceeded with to a final determination.

*Reversed.*